IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

EIGEN SYSTEMS LIMITED, KINETIC )
ENGINEERING DESIGNS LIMITED and )
KINETIC CUTTING SYSTEMS, INC., )
                               )
           Plaintiffs, )
                               )
      v. )      C.A. No.
                               )
MESSER CUTTING SYSTEMS, INC., )      **JURY TRIAL DEMANDED**
                               )
          Defendant. )

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Eigen Systems Limited ("Eigen"), Kinetic Engineering Designs Limited NZ and Kinetic Cutting Systems, Inc. (collectively "Kinetic" or "Plaintiffs") make the following allegations against Messer Cutting Systems, Inc. ("Messer" or "Defendant").

**NATURE OF THE ACTION**

1. This is a patent infringement action brought under 35 U.S.C. § 271 arising from Messer's direct and willful infringement of the following United States Patents: U.S. Patent No. 7,625,158 (the '158 Patent); U.S. Patent No. 9,669,560 (the '560 Patent); U.S. Patent No. 9,981,355 (the '355 Patent); and U.S. Patent No. 10,071,454 (the '454 Patent) (collectively, the "Asserted Patents") for the manufacture, use, offer to sell, sale of and/or importation into the United States of cutting and/or drilling machines that infringe the Asserted Patents. Messer uses the patented technologies without authorization. Plaintiffs bring this action to remedy Messer's infringement of Plaintiffs' concrete, non-abstract, innovative, novel, and groundbreaking patented technology. Messer's infringement has been and is willful, and Plaintiffs seek costs and fees associated with this action in addition to enhanced damages for willful infringement. Plaintiffs also seek exemplary

1

damages to the extent ordered by the Court and/or jury. Upon information and belief, Messer directly copied Kinetics' product(s). In addition, Messer's conduct has caused and continues to cause irreparable harm to Plaintiffs that cannot be remedied solely through monetary damages. For example, Messer's conduct has caused Plaintiffs harm in the marketplace by impacting sales and/or revenues related to the sales of Eigen and/or Kinetic's products. For example, Messer could not effectively compete in the marketplace without the use of Kinetic's patented technology, which substantially increases speed and efficiency. Irreparable harm to Plaintiffs is also demonstrated by Messer's conduct negatively impacting Plaintiffs, including irreparable harm to the licensees to the Asserted Patents. Thus, Plaintiffs seek to enjoin Messer's infringing conduct in addition to seeking monetary damages and other relief that the Court may deem appropriate.

2. Eigen is the owner of the Asserted Patents.

3. Kinetic, is the exclusive licensee to the Asserted Patents in the United States and owns all right to sue and recover damages and for injunctive relief for infringement thereof.

4. The patented inventions claimed in the Asserted Patents resolve concrete technical problems related to automated drilling and cutting systems. The Asserted Patents are directed to inventive concepts that are not abstract

## PARTIES

5. Plaintiff Eigen Systems Limited is a New Zealand company having its registered office at 30 Triton Drive, Albany, 0632, Auckland, New Zealand.

6. Plaintiff Kinetic Engineering Designs Limited is a New Zealand company having its registered office at 30 Triton Drive, Albany, 0632, Auckland, New Zealand.

7. Plaintiff Kinetic Cutting Systems, Inc. is a Colorado corporation whose principal place of business is West Burlington, IA. Plaintiff Kinetic specializes in sophisticated automated

cutting and fabrication systems. Kinetic is the exclusive licensee to the Asserted Patents, which license conveys to Kinetic the standing to bring actions for infringement of the Asserted Patents. Kinetic therefore has constitutional and prudential standing to bring this lawsuit as an exclusive licensee to the Asserted Patents.

8.     Upon information and belief, Defendant Messer Cutting Systems, Inc. is a corporation organized and existing under the laws of the State of Delaware having a principal place of business at W141 N9427 Fountain Blvd., Menomonee Falls, WI 53051. On information and belief, its service agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware, 19808.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action under the patent laws of the United States, United States Code, Title 35. This is an action for patent infringement that arises under the patent laws of the United States, 35 U.S.C. § 271, *et seq.* and the United States Constitution.

10.     This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

11.     This Court has general personal jurisdiction over Messer because, on information and belief, it is a Delaware entity. Moreover, on information and belief, Messer has conducted business in this District, purposely availing itself of the benefits of doing business in the state of Delaware. This Court has specific jurisdiction over Messer based on the same allegations.

12.     Venue properly lies in this District under 28 U.S.C. § 1400(b) because, on information and belief, Messer is a Delaware entity, resides in this District and has committed acts

of infringement in this District and/or purposely directed acts of infringement directed to this District.

## BACKGROUND

### KINETIC'S GROUNDBREAKING INNOVATIONS

13.     In 1993, Murray Houlton Forlong founded Kinetic and Eigen.

14.     Kinetic is a recognized leader in metal cutting systems worldwide. Kinetic developed dozens of patented innovations that take plate processing to new levels of speed, accuracy, and productivity. Kinetic's cutting systems are easy to service and therefore minimize downtime and maximize efficiency. Kinetic's innovations are novel, innovative, and directly apply to physical processes. They are practical, not abstract.

15.     By combining Kinetic's patented plate processing technology with vertical machining functions that can drill, mill, tap, bore and more, Kinetic enables plate processors to eliminate multiple setups and movement, saving time and money.

16.     Kinetic is known and recognized as a worldwide leader in its field. In addition to its superior technology, it provides around-the-clock service and the highest degree of responsiveness worldwide from its United States and New Zealand offices. Messer is a direct competitor to Kinetic in the field of metal cutting systems. Messer and Kinetic compete for the same customers and appear at the same trade shows. Messer has studied Kinetic's machines at least at trade shows and, upon information and belief, has copied all or certain aspects of Kinetic's technology. For example, upon information and belief, Messer's agents/employees studied Kinetic's product(s) during trade shows (*e.g.* the Fabtech trade shows). Upon information and belief, Messer's studies included recording the structure and/or operation of Kinetic's products, by written, photographic and/or other means.

17.     At trade shows, Kinetic prominently provides notice of its patents connected with its devices, as shown in the picture below.



18.     Plaintiffs have complied with the marking requirements of 35 U.S.C. Section 287 by marking practicing products with "Patent No." and the patent numbers on a plate affixed to the Kinetic machines as well as on material associated with their marketing.



19.     Kinetic also provides notice of its patents directly on its products. Further, Kinetic provided notice of its patents on marketing and sales documentation.

**The Clamping Assembly Patent**

20.     In the 2000s, Mr. Forlong conceived of and invented a novel way to facilitate drilling and/or cutting of metal (often very large and thick sheets of metal) by an assembly that maintains accuracy but cuts the operational time by approximately two thirds (the "Clamping Assembly Patent"). The inventions in the Clamping Assembly Patent were a significant improvement over prior cutting systems.  For example, prior systems used a pneumatic process to raise and lower the drilling or cutting assembly and the clamp foot. When moving between cutting or drilling areas, the drilling assembly would fully retract before moving to the new area.  Mr. Forlong developed a device where the cutting/drilling assembly and clamp foot could be moved more efficiently by being efficiently retracted above the work surface to move to the new area prior to being moved down to

begin cutting or drilling.  Significant increase in productivity and profits for the owner/operator are realized due to these inventions because of the increase in efficiency in metalworking operations.

21.    One major reason that customers purchase Kinetic's products is because of these benefits. Without having these benefits, only achieved from the use of Kinetic's patented technology, competitors are at a severe disadvantage. Upon information and belief, Messer copied Kinetic's patented technology to attempt to compete for sales with Kinetic.

22.    On September 22, 2006, Mr. Forlong filed New Zealand Patent Application No. 550065.  The United States version of that application was filed as U.S. Patent Application No. 11/859,061.  On December 1, 2009, this application issued as U.S. Patent No. 7,625,158 (the '158 Patent), which is attached as Exhibit A.

**The Cutting Machine Waste Extraction Patent**

23.    Mr. Forlong also had another breakthrough.  During a cutting operation, the cutting and/or drilling machine would produce significant waste, much of it wet, thereby mucking up the cutting surface, compromising precision, and slowing production time for cleaning.  Mr. Forlong came up with a unique way to clean and dry the cutting surface *without* disrupting a cutting project while also extracting chips.  All with a unique and innovative system of airflow (sometimes involving ducts and fans) working together to expel waste from the cutting and/or drilling surface.

24.    On September 2, 2011, Mr. Forlong filed New Zealand Patent Application No. 594980.  The United States version of that application was filed as U.S. Patent Application No. 14/241,218. On June 6, 2017, that application issued as U.S. Patent No. 9,669,560 (the '560 Patent), which is attached as Exhibit B.

**The Cutting Coolant Recovery Patent**

25.    During cutting and drilling operations, drilling/cutting machines may disperse a coolant onto the work surface to aid in drilling or cutting.  Over time, however, the coolant and/or metal chips could foul the work surface and impede later cutting or drilling operations.  Mr. Forlong invented an apparatus to address this issue by removing the coolant from the work surface and/or the chips cut therefrom.  The drilling and cutting operations could be performed more cleanly and efficiently, even when coolant fluid was used.

26.    On August 19, 2011, Mr. Forlong filed New Zealand Patent Application No. 594685. The United States version of that application was filed as U.S. Patent Application No. 14/238,995. On May 29, 2018, that application issued as U.S. Patent No. 9,981,355 (the '355 Patent), which is attached as Exhibit C.

**The Coolant and Chip Joint Recovery and Separation Patent**

27.    In prior cutting drilling systems, cut/drilled pieces ("chips") of the metal plate were typically swept up or otherwise gathered by human operators.  This was very labor-intensive and time-consuming way to retrieve the chips, especially for very thick metal plate chips.

28.    As discussed above for the '560 and '355 Patents, Mr. Forlong's improved drilling/cutting system was able to remove both chips and coolant from the work surface using a series of ducts.  Mr. Forlong further invented a system for separating the chips from the coolant.

29.    On April 12, 2013, Mr. Forlong filed New Zealand Patent Application No. 609390. The United States version of that application was filed as U.S. Patent Application No. 14/783,809. On September 11, 2018, that application issued as U.S. Patent No. 10,071,454 (the '454 Patent), which is attached as Exhibit D.

8

## THE CUTTING/DRILLING SECTOR AND ACCUSED INTRUMENTALITIES

30.    Machine cutting systems like those built and provided by Kinetic are highly sophisticated, making the market extremely specialized.  Without the use of Plaintiffs' intellectual property, competitors would be unable to effectively compete in the market. Intellectual property is key to success in this market. Its unauthorized use therefore causes irreparable harm.

31.    Kinetic is the market leader for machines that both cut and drill (providing a significant number of combination cutting/drilling machines sold in the United States). The inventions claimed in the Asserted Patents provide Kinetic with a significant technical and business advantage over all competitors, including over Messer.  Plaintiffs have never licensed the Asserted Patents or offered a license to the Asserted Patents to any third party.

32.    Messer looked to close the gap between it and Kinetic by copying and incorporating Kinetic's patented technological solutions into Messer machines.

33.    Messer makes, imports, offers for sale, and/or sells the Messer MPC2000 MC and similar products that may be identified during discovery in this action (the "Accused Messer Instrumentality").[1]

---

[1] https://us.messer-cutting.com/products/mpc2000-mc/

9

## COUNT 1 – INFRINGEMENT OF U.S. PATENT NO. 7,625,158

34.   Kinetic repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

35.   On December 1, 2009, the '158 Patent was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Clamping Assembly." Thus, the '158 Patent was found to be valid, useful, novel, and non-obvious.

36.   Kinetic has all substantive rights in and to the '158 Patent, including the sole and exclusive right to prosecute this action and enforce the '158 Patent against infringers, and to collect damages for all relevant times.

37.   Each element of at least claim 1 is present in the Accused Instrumentality either literally or under the doctrine of equivalents if anywhere determined not to be literally present.

38.   Messer has directly infringed and continues to directly infringe (either literally or under the doctrine of equivalents) at least claim 1 of the '158 Patent, in violation of 35 U.S.C. § 271(a), by making, using, importing, offering for sale, and/or selling the Accused Instrumentality without authority in the United States and will continue to do so unless enjoined by this Court. For example, claim 1 of the '158 Patent is recited below, along with non-limiting annotations and pictures providing preliminary details of Messer's infringement:

> A clamping assembly for clamping a product to allow drilling and/or cutting of the product by a drilling or cutting assembly having a drill tool or cutter, the clamping assembly including

For example, the Accused Messer Instrumentality includes a clamping assembly for clamping a product to allow drilling and/or cutting of the product by a drilling or cutting assembly having a drill tool or cutter.

The MPC2000 MC is a highly flexible, multi-process Messer cutting machine that can be equipped with multiple carriages for up to five separate processes including precision plasma, Oxyfuel, drilling up to 2.5", milling, and markers, with the ability to install up to 4 tool stations.

This plasma cutter delivers clean, smooth cut part edges and precise cut holes, all with high accuracy and repeatability. The MPC2000 MC includes linear motion ways, and state-of-the-art AC servo drives provide dependable machine tool performance.

The drilling and milling high-suction chip vacuum system allows for a cleaner table surface and work area. This system prevents chips from flying off the surface table for operator safety and height-sensing accuracy. There is also a collection hopper for recycling steel chips.

Integrating the MPC2000 MC will improve your plate processing in a number of ways. Built for heavy-duty structural steel processing, in applications like truck manufacturing and tank cutting, this machine is the perfect fit for multiple types of industries such as steel service centers, shipbuilding, the rail industry, oil and gas, construction, mining, and big agriculture.

Source: https://us.messer-cutting.com/products/mpc2000-mc/

control means,

For example, the Accused Messer Instrumentality includes a control means.

High Accuracy and Repeatability

Achieve accurate results across applications by programming your machine for your specific purposes, reducing the risk of costly errors.

Consistent performance and repeatable results are critical for maintaining efficient production, and this machine allows you to consistently complete various functions at the same high standard.

Source: https://us.messer-cutting.com/products/mpc2000-mc/



activation means,

For example, the Accused Messer Instrumentality includes an activation means. For example, on information and belief, the Accused Messer Instrumentality includes one or more servo motors that activate the ball screw that is guided by linear bearings of the moving means.

**When you purchase an MPC2000 MC, you'll gain access to the following features and capabilities**

- Materials processed: Mild Steel, Structural Steel, Stainless Steel, and Aluminum.
- Material thickness capacity: 26 ga. to 8" (203.2mm) dependent on process.
- Cutting width: 12' (3.657m) to 28' (8.534m).
- Cutting length: up to 200' (60.69m).
- Drilling up to 2.5" (63.5mm) diameter.
- Tapping up to 1 1/2" (38.1mm) diameter.
- Milling functionality.
- Beveling curves functionality.
- Contouring speeds up to 400 ipm and positioning speeds up to 1400 ipm.
- Enhanced linear motion ways and state-of-the-art AC servo drives.
- Long-life band drives.
- Larger end trucks.
- High suction chip collection vacuum system.
- Easy-to-use GlobalControlPlus touch screen interface.

12

Source: https://us.messer-cutting.com/products/mpc2000-mc/

moving means and

For example, the Accused Messer Instrumentality includes a moving means.

clamp foot means being operatively connected

For example, the Accused Messer Instrumentality includes a clamp foot means that is operatively connected.



Source: https://www.youtube.com/watch?v=uZU8JEu5Dpk at 3:57.



Source: https://us.messer-cutting.com/wp-content/uploads/2019/12/MPC2000-MC.pdf

> whereby the control means controls the activation means to control the torque and distance moved on the activation means and moving means such that any movement of the drilling or clamping assembly relative to each other can be controlled such that the depth of and timing of drilling or cutting and/or clamping by the drilling or cutting or clamping assembly can be adjusted accordingly such that if the product being clamped by the clamp foot means is moved during any additional forces that occur during drilling or cutting, then the control means can compensate and ensure the drilling or cutting depth is maintained

For example, in the Accused Messer Instrumentality, the control means controls the activation means to control the torque and distance moved on the activation means and moving means such that any movement of the drilling or clamping assembly relative to each other can be controlled such that the depth of and timing of drilling or cutting and/or clamping by the drilling or cutting or clamping assembly can be adjusted accordingly such that if the product being clamped by the clamp foot means is moved during any additional forces that occur during drilling or cutting, then the control means can compensate and ensure the drilling or cutting depth is maintained. For example, the Accused Messer Instrumentality is able to achieve this level of control based on the

14

use of servo motors that provide information about the rotations of the motors to the controller. In this way, the controller can detect and compensate for any movement while drilling.

> whereby as the control means allows for precise movement between the drilling or cutting and clamping assemblies, movements such as vertically moving the clamp foot means down towards the product to be drilled or cut can occur simultaneously with the movement of the drill assembly such that the clamping assembly leads the drilling tool or cutter by a known amount and conversely the retraction of the clamp foot means can occur simultaneously with the retraction of the drill or cutter once the drill or cutter has retracted clear of the product being drilled or cut.

For example, in the Accused Messer Instrumentality, as the control means allows for precise movement between the drilling or cutting and clamping assemblies, movements such as vertically moving the clamp foot means down towards the product to be drilled or cut can occur simultaneously with the movement of the drill assembly such that the clamping assembly leads the drilling tool or cutter by a known amount and conversely the retraction of the clamp foot means can occur simultaneously with the retraction of the drill or cutter once the drill or cutter has retracted clear of the product being drilled or cut.

15



Source: https://www.youtube.com/watch?v=uZU8JEu5Dpk at 1:01.

As shown in the video of the Messer MPC2000 MC, the retraction of the clamp foot means occurs simultaneously with the retraction of the drill or cutter once the drill or cutter has retracted clear of the product being drilled or cut.

39.     Messer has committed these acts of infringement without license or authorization.

40.     By engaging in the conduct described herein, Messer has caused injury to Kinetic and Kinetic has been damaged and continues to be damaged as a result thereof. Messer is thus liable to Kinetic for infringement of the '158 Patent, pursuant to 35 U.S.C. § 271.  Messer's infringement has caused irreparable harm. The court should permanently enjoin Messer for its infringement.

41.     As both a direct and proximate result of Messer's infringement of the '158 Patent, Kinetic has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate Kinetic for Messer's past infringement pursuant to 35 U.S.C. § 284, but in no event less than a reasonable royalty, together with interest and costs.  Kinetic also seeks a permanent injunction to stop Messer's infringing use of its intellectual property.

42.     In addition, the infringing acts and practices of Messer have caused, are causing, and, unless such acts or practices are enjoined by the Court, will continue to cause immediate and irreparable harm and damage to Kinetic for which there is no adequate remedy at law, and for which Messer is entitled to injunctive relief pursuant to 35 U.S.C. § 283. As such, Kinetic is entitled to compensation for any continuing and/or future infringement up until the date that Messer is finally and permanently enjoined from further infringement.

43.     Kinetic has been damaged as a result of the infringing conduct by Messer alleged above. Thus, Messer is liable to Kinetic in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

44.     Kinetic has complied with the marking requirements of 35 U.S.C. Section 287 by marking practicing products with "Patent No." and the patent number.  Kinetic is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '158 Patent.

45.     Messer was aware of and has been on notice of the '158 Patent and, on information and belief, its infringement of that patent before the filing of this Complaint, and its infringement has been willful and egregious. For example, upon information and belief, agents of Messer were observed photographing the Kinetic product at least at the Fabtech trade shows. The product on display at that trade show was marked with the '158 Patent number.  Moreover, Kinetic banners and brochures also prominently displayed the '158 Patent number.  After its personnel photographed and studied the Kinetic device, Messer copied the machine to produce and/or modify the Accused Messer Instrumentality.  Because of Messer's infringement is willful and egregious, Plaintiffs are entitled to enhanced damages, in the form of treble damages, under 35 U.S.C. § 284.

17

## COUNT 2 – INFRINGEMENT OF U.S. PATENT NO. 9,669,560

46.    Kinetic repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

47.    On June 6, 2017, the '560 Patent was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Cutting Machine Waste Extraction Apparatus."

48.    Kinetic has all substantive rights in and to the '560 Patent, including the sole and exclusive right to prosecute this action and enforce the '560 Patent against infringers, and to collect damages for all relevant times. Each element of at least claim 1 is present in the Accused Instrumentality either literally or under the doctrine of equivalents if anywhere determined not to be literally present.

49.    Messer has directly infringed and continues to directly infringe (either literally or under the doctrine of equivalents) at least claim 1 of the '560 Patent, in violation of 35 U.S.C. § 271(a), by making, using, importing, offering for sale, and/or selling the Accused Instrumentality without authority in the United States and will continue to do so unless enjoined by this Court. For example, claim 1 of the '560 Patent is recited below, along with non-limiting annotations and pictures providing preliminary details of Messer's infringement:

A cutting machine waste extraction apparatus for a cutting machine that cuts a plate, the cutting machine waste extraction apparatus being supported adjacent a cutting area at a cutting table during cutting of the plate, the cutting machine waste extraction apparatus comprising:

For example, the Accused Messer Instrumentality is a cutting machine that includes a cutting machine waste extraction apparatus for a cutting machine that cuts a plate, the cutting machine waste extraction apparatus being supported adjacent a cutting area at a cutting table during cutting of the plate.

18

The MPC2000 MC is a highly flexible, multi-process Messer cutting machine that can be equipped with multiple carriages for up to five separate processes including precision plasma, Oxyfuel, drilling up to 2.5", milling, and markers, with the ability to install up to 4 tool stations.

This plasma cutter delivers clean, smooth cut part edges and precise cut holes, all with high accuracy and repeatability. The MPC2000 MC includes linear motion ways, and state-of-the-art AC servo drives provide dependable machine tool performance.

The drilling and milling high-suction chip vacuum system allows for a cleaner table surface and work area. This system prevents chips from flying off the surface table for operator safety and height-sensing accuracy. There is also a collection hopper for recycling steel chips.

Integrating the MPC2000 MC will improve your plate processing in a number of ways. Built for heavy-duty structural steel processing, in applications like truck manufacturing and tank cutting, this machine is the perfect fit for multiple types of industries such as steel service centers, shipbuilding, the rail industry, oil and gas, construction, mining, and big agriculture.

Source: https://us.messer-cutting.com/products/mpc2000-mc/

19

# MPC2000 MC

The **MPC2000 MC** features greatly enhanced drilling, tapping and milling capability a more robust design with faster acceleration drives.  The new drilling and milling high-suction chip vacuum system coupled with the Slagger® self-cleaning table keeps the work surface and work area, cleaner. The swarf is collected in a hopper for recycling of the steel chips.

The **NEW** and improved MPC2000 MC is two machines in one producing the best cut parts available on the market. The enhanced machining process allows the ability to drill, tap, countersink, counterbore, and mill [X-Y] critical internal features. External features are cut with the plasma or oxyfuel torch. The parts are complete without moving the part to another piece of machining equipment. This multi-process machine can be equipped plasma and oxy-fuel cutting, bevel cutting, and various markers, all driven by OmniWin software.



**CHIP EXTRACTION**

High power vacuum and collection system for a cleaner work environment.

20



**Chip Vacuum Extraction and Collection**

When cutting, drilling, milling, or marking plates, you will typically create "chips" of material that can accumulate on the workstation. The MPC2000 MC has built-in chip vacuum extraction and collection features to keep your work surface clean and clear. There is a collection hopper for recycling steel chips. A dust collector is required for chip collection.

Source: https://us.messer-cutting.com/wp-content/uploads/2019/12/MPC2000-MC.pdf

a ducting system, wherein the ducting system comprises:

For example, the Accused Messer Instrumentality includes a ducting system.



Milling process sped up for time

Chip Extraction

Source: https://www.youtube.com/watch?v=uZU8JEu5Dpk at 1:07.

After a chip is cut, a chip extraction system is used to duct the chip away from the work surface, as shown in the screenshot from Messer's demonstration video.

The drilling and milling high-suction chip vacuum system allows for a cleaner table surface and work area. This system prevents chips from flying off the surface table for operator safety and height-sensing accuracy. There is also a collection hopper for recycling steel chips.[2]

---

[2] https://us.messer-cutting.com/products/mpc2000-mc/

**When you purchase an MPC2000 MC, you'll gain access to the following features and capabilities:**

- Materials processed: Mild Steel, Structural Steel, Stainless Steel, and Aluminum.
- Material thickness capacity: 26 ga. to 8" (203.2mm) dependent on process.
- Cutting width: 12' (3.657m) to 28' (8.534m).
- Cutting length: up to 200' (60.69m).
- Drilling up to 2.5" (63.5mm) diameter.
- Tapping up to 1 1/2" (38.1mm) diameter.
- Milling functionality.
- Beveling curves functionality.
- Contouring speeds up to 400 ipm and positioning speeds up to 1400 ipm.
- Enhanced linear motion ways and state-of-the-art AC servo drives.
- Long-life band drives.
- Larger end trucks.
- High suction chip collection vacuum system.
- Easy-to-use GlobalControlPlus touch screen interface.

a first duct which receives the waste from the plate;

For example, the Accused Messer Instrumentality includes a first duct which receives the waste from the plate.

For example, the first duct of the MPC2000MC includes one or more of the black and gray tubing that receive the cut chip from the plate.

23



Source: https://www.youtube.com/watch?v=uZU8JEu5Dpk at 1:07.



a second duct which receives the waste from the first duct;

For example, the Accused Messer Instrumentality includes a second duct which receives the waste from the first duct.

For example, the Messer MPC2000MC ducting system includes the horizontal ducting section highlighted below that receives the chip from the first ducting section.



3

---

3 https://www.youtube.com/watch?v=uZU8JEu5Dpk at 3:11.



wherein the first duct is configured to be movable along the length of the second duct; and

For example, in the Accused Messer Instrumentality, the first duct is configured to be movable along the length of the second duct.

For example, the trapezoid shape assembly that connects the first and second ducts allows the first duct to move along the length of the second duct.

wherein the second duct includes a lengthwise opening which is sealed by a flexible belt, said flexible belt being deformable from sealed contact with said second duct, adjacent a junction apparatus, the junction apparatus providing a fluid connection between said first duct and said second duct;

For example, in the Accused Messer Instrumentality, the second duct includes a lengthwise opening which is sealed by a flexible belt, said flexible belt being deformable from sealed contact with said second duct, adjacent a junction apparatus, the junction apparatus providing a fluid connection between said first duct and said second duct.

26



The flexible belt is shown in this picture of a Messer MPC2000MC installed in the United States:



a ducting section through which the waste is able to flow from said first duct to said second duct, and rollers configured to create a slot opening in the second duct by lifting said flexible belt from sealed contact with the second duct in a region along the length of the second duct ahead of the ducting section with respect to a direction of travel of the ducting section,

For example, the Accused Messer Instrumentality includes a ducting section through which the waste is able to flow from said first duct to said second duct, and rollers configured to create a slot opening in the second duct by lifting said flexible belt from sealed contact with the second duct in a region along the length of the second duct ahead of the ducting section with respect to a direction of travel of the ducting section.

the rollers being further configured to lift the flexible belt over said ducting section and redirect said flexible belt back into sealed contact with said second duct in a region along the length of the second duct behind said ducting section relative to said direction of travel, said ducting section being aligned with the slot opening in the second duct to fluidly communicate therewith, and

For example, in the Accused Messer Instrumentality, the rollers being further configured to lift the flexible belt over said ducting section and redirect said flexible belt back into sealed contact with said second duct in a region along the length of the second duct behind said ducting section

relative to said direction of travel, said ducting section being aligned with the slot opening in the second duct to fluidly communicate therewith.

> wherein a sliding seal is provided on said ducting section and configured to seal the second duct.

For example, in the Accused Messer Instrumentality, a sliding seal is provided on said ducting section and configured to seal the second duct.

50.     Messer has committed these acts of infringement without license or authorization.

51.     By engaging in the conduct described herein, Messer has caused injury to Kinetic and Kinetic has been damaged and continues to be damaged as a result thereof. Messer is thus liable to Kinetic for infringement of the '560 Patent, pursuant to 35 U.S.C. § 271.

52.     As a direct and proximate result of Messer's infringement of the '560 Patent, Kinetic has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate Kinetic for Messer's past infringement pursuant to 35 U.S.C. § 284, but in no event less than a reasonable royalty, together with interest and costs.

53.     In addition, the infringing acts and practices of Messer have caused, are causing, and, unless such acts or practices are enjoined by the Court, will continue to cause immediate and irreparable harm and damage to Kinetic for which there is no adequate remedy at law, and for which Messer is entitled to injunctive relief pursuant to 35 U.S.C. § 283. As such, Kinetic is entitled to compensation for any continuing and/or future infringement up until the date that Messer is finally and permanently enjoined from further infringement.

54.     Kinetic has been damaged as a result of the infringing conduct by Messer alleged above.  Thus, Messer is liable to Kinetic in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

29

55.     Plaintiffs has complied with the marking requirements of 35 U.S.C. Section 287 by marking practicing products with "Patent No." and the patent number.  Kinetic is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '560 Patent.

56.     Messer was aware of and has been on notice of the '560 Patent and on information and belief, its infringement of that patent before the filing of this Complaint, and its infringement has been willful and egregious. For example, upon information and belief, Messer's agents/employees studied Kinetic's product(s) during trade shows (*e.g.* the Fabtech trade shows). Upon information and belief, Messer's studies included recording the structure and/or operation of Kinetic's products, by written, photographic and/or other means.

57.     After its personnel photographed and studied the Kinetic device, Messer copied the machine to produce and/or modify the Accused Messer Instrumentality.  Because Messer's infringement is willful and egregious, Plaintiffs are entitled to enhanced damages, in the form of treble damages, under 35 U.S.C. § 284.

## COUNT 3 – INFRINGEMENT OF U.S. PATENT NO. 9,981,355

58.     Kinetic repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

59.     On May 29, 2018, the '355 Patent was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Above Plate Coolant Containment and Recovery System."

60.     Kinetic has all substantive rights in and to the '355 Patent, including the sole and exclusive right to prosecute this action and enforce the '355 Patent against infringers, and to collect damages for all relevant times.

61.     Each element of at least claim 1 is present in the Accused Instrumentality either literally or under the doctrine of equivalents if anywhere determined not to be literally present.

62.     Messer has directly infringed and continues to directly infringe (either literally or under the doctrine of equivalents) at least claim 1 of the '355 Patent, in violation of 35 U.S.C. § 271(a), by making, using, importing, offering for sale, and/or selling the Accused Instrumentality without authority in the United States and will continue to do so unless enjoined by this Court. For example, claim 1 of the '355 Patent is recited below, along with non-limiting annotations and pictures providing preliminary details of Messer's infringement:

> A machine including at least one cutting tool in the form of a cutting head with coolant supplied for machining parts from flat material, the machine having a coolant containment and recovery system which comprises:

For example, the '355 Patent explains that in drilling and cutting machines, such as the Messer Accused Instrumentalities, "[t]ypically the part will require a process to sever the part profile from the parent plate but will also require machining operations such as drilling, tapping or milling

31

which can use coolant during the machining operation." 1:30-23-26. For example, the Accused Messer Instrumentality includes at least one cutting tool in the form of a cutting head with coolant supplied for machining parts from flat material. As described below, the Accused Messer Instrumentality include a coolant containment and recovery system.

# MPC2000 MC

The **MPC2000 MC** features greatly enhanced drilling, tapping and milling capability a more robust design with faster acceleration drives. The new drilling and milling high-suction chip vacuum system coupled with the Slagger® self-cleaning table keeps the work surface and work area, cleaner. The swarf is collected in a hopper for recycling of the steel chips.

The **NEW** and improved MPC2000 MC is two machines in one producing the best cut parts available on the market. The enhanced machining process allows the ability to drill, tap, countersink, counterbore, and mill [X-Y] critical internal features. External features are cut with the plasma or oxyfuel torch. The parts are complete without moving the part to another piece of machining equipment. This multi-process machine can be equipped plasma and oxy-fuel cutting, bevel cutting, and various markers, all driven by OmniWin software.

Source: https://us.messer-cutting.com/wp-content/uploads/2019/12/MPC2000-MC.pdf



https://www.youtube.com/watch?v=uZU8JEu5Dpk at 1:07.

Messer documentation show that the Accused Messer Instrumentality works with a coolant recovery system (e.g., flood coolant recovery).

**MD250 Drill Unit** [for the MPC2000 MC]

- Drills up to 2.5″ diameter (on 6″ thick mild steel).
- Tapping up to 1 ½″.
- A high suction vacuum system allows for cleaning of the table's surface and work area, preventing chips from flying off the table, increasing operator safety, and plate cutting efficiency. There is a collection area for recycling steel chips.
- Coolant through the tool results in reliable and easy drilling (mist or flood).
- Feed-rate controlled 23.5″ drill stroke.
- CAT 50 taper spindle.
- 49.8 HP peak; 1.5″ – 6 unc.
- Optional 24-tool storage with automatic tool exchange.



**MD400 Heavy-Duty Drill Unit** [for the TMC4500 DB & MCP2000 MC].

- Drills up to 4″ diameter (on 4″ thick mild steel).
- Tapping up to 1 ½″ – 6″ in mild steel.
- Coolant through the tool results in reliable and easy drilling (mist or flood).
- Feed-rate controlled 18″ drill stroke.
- CAT 50 taper spindle.
- 65 HP peak; 1.5″ – 6 unc.
- Optional 24-tool storage with automatic tool exchange.



Source: https://us.messer-cutting.com/processes/plasma-drilling-machines/

a waste removal apparatus;

For example, the Accused Messer Instrumentality include a waste remove apparatus.



**CHIP EXTRACTION**
High power vacuum and collection system for a cleaner work environment.

Source: https://us.messer-cutting.com/wp-content/uploads/2019/12/MPC2000-MC.pdf

The drilling and milling high-suction chip vacuum system allows for a cleaner table surface and work area. This system prevents chips from flying off the surface table for operator safety and height-sensing accuracy. There is also a collection hopper for recycling steel chips.

Source: https://us.messer-cutting.com/products/mpc2000-mc/

35



## Chip Vacuum Extraction and Collection

When cutting, drilling, milling, or marking plates, you will typically create "chips" of material that can accumulate on the workstation. The MPC2000 MC has built-in chip vacuum extraction and collection features to keep your work surface clean and clear. There is a collection hopper for recycling steel chips. A dust collector is required for chip collection.

Source: https://us.messer-cutting.com/products/mpc2000-mc/

a coolant guard having at least one wall bounding a containment forming area, wherein the coolant guard is fluidly connected to the waste removal apparatus and wherein in use:

said coolant guard is located upon a plate to be machined; and

the containment forming area becomes a containment area, within which the cutting tool and coolant are both located during the machining process;

For example, the Accused Messer Instrumentality has a coolant guard with a wall bounding a containment forming area.  When in use, the coolant guard of the Accused Messer Instrumentality located upon a plate to be machined to make a containment area.





Source: https://www.youtube.com/watch?v=uZU8JEu5Dpk at 0:59 and 1:01 showing

clamp foot with integrated coolant guard being placed into contact with work surface.

wherein the waste removal apparatus comprises a lower ducting section fluidly connected with the containment forming area through the at least one wall of the coolant guard, and an upper ducting section, fluidly connected with the lower ducting section, which slidably inter-fits with the lower ducting section to allow relative movement between the lower ducting section and the upper ducting section.

For example, in the Accused Messer Instrumentality, the waste removal apparatus includes

a lower ducting section fluidly connected with the containment forming area through the at least

38

one wall of the coolant guard, and an upper ducting section, fluidly connected with the lower ducting section, which slidably inter-fits with the lower ducting section to allow relative movement between the lower ducting section and the upper ducting section.   For example, the Accused Messer Instrumentality includes a lower ducting section fluidly connected with the containment forming area through the at least one wall of the coolant guard.   For example, the section below is a lower ducting section:



Source: https://us.messer-cutting.com/wp-content/uploads/2019/12/MPC2000-MC.pdf

For example, the Accused Messer Instrumentality includes an upper ducting section, fluidly connected with the lower ducting section, which slidably inter-fits with the lower ducting section to allow relative movement between the lower ducting section and the upper ducting section.



Source: https://www.youtube.com/watch?v=uZU8JEu5Dpk at 3:11.



Source: https://us.messer-cutting.com/wp-content/uploads/2019/12/MPC2000-MC.pdf



Source: https://us.messer-cutting.com/wp-content/uploads/2019/12/MPC2000-MC.pdf

63.    Messer has committed these acts of infringement without license or authorization.

64.    By engaging in the conduct described herein, Messer has caused injury to Kinetic and Kinetic has been damaged and continues to be damaged as a result thereof. Messer is thus liable to Kinetic for infringement of the '355 Patent, pursuant to 35 U.S.C. § 271.

65.    As a direct and proximate result of Messer's infringement of the '355 Patent, Kinetic has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate Kinetic for Messer's past infringement pursuant to 35 U.S.C. § 284, but in no event less than a reasonable royalty, together with interest and costs.

66.    In addition, the infringing acts and practices of Messer have caused, are causing, and, unless such acts or practices are enjoined by the Court, will continue to cause immediate and irreparable harm and damage to Kinetic for which there is no adequate remedy at law, and for which Messer is entitled to injunctive relief pursuant to 35 U.S.C. § 283. As such, Kinetic is entitled to compensation for any continuing and/or future infringement up until the date that Messer is finally and permanently enjoined from further infringement.

41

67. Kinetic has been damaged as a result of the infringing conduct by Messer alleged above. Thus, Messer is liable to Kinetic in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

68. Kinetic has complied with the marking requirements of 35 U.S.C. Section 287 by marking practicing products with "Patent No." and the patent number. Kinetic is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '355 Patent.

69. Messer was aware of and has been on notice of the '355 Patent and on information and belief, its infringement of that patent before the filing of this Complaint, and its infringement has been willful and egregious. For example, upon information and belief, Messer's agents/employees studied Kinetic's product(s) during trade shows (*e.g.* the Fabtech trade shows). Upon information and belief, Messer's studies included recording the structure and/or operation of Kinetic's products, by written, photographic and/or other means.

70. The product on display at that trade show was marked with the '355 Patent number. Moreover, Kinetic banners and brochures also prominently displayed the '355 Patent number.

71. After its personnel photographed and studied the Kinetic device, Messer copied the machine to produce and/or modify the Accused Messer Instrumentality. Because Messer's infringement is willful and egregious, Plaintiffs are entitled to enhanced damages, in the form of treble damages, under 35 U.S.C. § 284.

## COUNT 4 – INFRINGEMENT OF U.S. PATENT NO. 10,071,454

72.     Kinetic repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

73.     On September 11, 2018, the '454 Patent was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Coolant and Chip Separator Apparatus."

74.     Kinetic has all substantive rights in and to the '454 Patent, including the sole and exclusive right to prosecute this action and enforce the '454 Patent against infringers, and to collect damages for all relevant times.

75.     Each element of at least claim 17 is present in the Accused Instrumentality either literally or under the doctrine of equivalents if anywhere determined not to be literally present.

76.     Messer has directly infringed and continues to directly infringe (either literally or under the doctrine of equivalents) at least claim 17 of the '454 Patent, in violation of 35 U.S.C. § 271(a), by making, using, importing, offering for sale, and/or selling the Accused Instrumentality without authority in the United States and will continue to do so unless enjoined by this Court. For example, claim 1 of the '454 Patent is recited below, along with non-limiting annotations and pictures providing preliminary details of Messer's infringement:

> A separator apparatus for a cutting machine which separates chips from coolant, wherein the separator apparatus includes a fluid chamber into which an airborne mixture of chips and coolant driven by an airflow enters via an entry port, said separator apparatus comprising:

For example, the Accused Messer Instrumentality includes a vacuum system for removing chips and coolant from a work surface.  For example, the Accused Messer Instrumentality includes a separator apparatus for a cutting machine which separates chips from coolant, wherein the

43

separator apparatus includes a fluid chamber into which an airborne mixture of chips and coolant driven by an airflow enters via an entry port.

## MPC2000 MC

The **MPC2000 MC** features greatly enhanced drilling, tapping and milling capability a more robust design with faster acceleration drives. The new drilling and milling high-suction chip vacuum system coupled with the Slagger® self-cleaning table keeps the work surface and work area, cleaner. The swarf is collected in a hopper for recycling of the steel chips.

The **NEW** and improved MPC2000 MC is two machines in one producing the best cut parts available on the market. The enhanced machining process allows the ability to drill, tap, countersink, counterbore, and mill [X-Y] critical internal features. External features are cut with the plasma or oxyfuel torch. The parts are complete without moving the part to another piece of machining equipment. This multi-process machine can be equipped plasma and oxy-fuel cutting, bevel cutting, and various markers, all driven by OmniWin software.

Source: https://us.messer-cutting.com/wp-content/uploads/2019/12/MPC2000-MC.pdf

45



**CHIP EXTRACTION**
High power vacuum and collection system for a cleaner work environment.

Source: https://us.messer-cutting.com/wp-content/uploads/2019/12/MPC2000-MC.pdf

The drilling and milling high-suction chip vacuum system allows for a cleaner table surface and work area. This system prevents chips from flying off the surface table for operator safety and height-sensing accuracy. There is also a collection hopper for recycling steel chips.

Source: https://us.messer-cutting.com/products/mpc2000-mc/



**Chip Vacuum Extraction and Collection**

When cutting, drilling, milling, or marking plates, you will typically create "chips" of material that can accumulate on the workstation. The MPC2000 MC has built-in chip vacuum extraction and collection features to keep your work surface clean and clear. There is a collection hopper for recycling steel chips. A dust collector is required for chip collection.

Source: https://us.messer-cutting.com/products/mpc2000-mc/

Messer documentation shows that the Accused Messer Instrumentality works with mist and/or flood applied coolant.

**MD250 Drill Unit** [for the MPC2000 MC]

- Drills up to 2.5″ diameter (on 6″ thick mild steel).
- Tapping up to 1 ½″.
- A high suction vacuum system allows for cleaning of the table's surface and work area, preventing chips from flying off the table, increasing operator safety, and plate cutting efficiency. There is a collection area for recycling steel chips.
- Coolant through the tool results in reliable and easy drilling (mist or flood).
- Feed-rate controlled 23.5″ drill stroke.
- CAT 50 taper spindle.
- 49.8 HP peak; 1.5″ − 6 unc.
- Optional 24-tool storage with automatic tool exchange.



**MD400 Heavy-Duty Drill Unit** [for the TMC4500 DB & MCP2000 MC].

- Drills up to 4″ diameter (on 4″ thick mild steel).
- Tapping up to 1 ½″ − 6″ in mild steel.
- Coolant through the tool results in reliable and easy drilling (mist or flood).
- Feed-rate controlled 18″ drill stroke.
- CAT 50 taper spindle.
- 65 HP peak; 1.5″ − 6 unc.
- Optional 24-tool storage with automatic tool exchange.



Source: https://us.messer-cutting.com/processes/plasma-drilling-machines/

> a chip collector in the fluid chamber that captures the chips and enables the chips to be separated and removed from the coolant in the fluid chamber, wherein the chip collector comprises:

For example, the Accused Messer Instrumentality includes a chip collector in the fluid chamber that captures the chips and enables the chips to be separated and removed from the coolant in the fluid chamber.

47



Source: https://us.messer-cutting.com/wp-content/uploads/2019/12/MPC2000-MC.pdf

The drilling and milling high-suction chip vacuum system allows for a cleaner table surface and work area. This system prevents chips from flying off the surface table for operator safety and height-sensing accuracy. There is also a collection hopper for recycling steel chips.

Source: https://us.messer-cutting.com/products/mpc2000-mc/

> a chip conduit enclosing a majority of a conveyor within the fluid chamber, said chip conduit having an opening, wherein the conveyor travels within said chip conduit; and

For example, the Accused Messer Instrumentality is a chip conduit enclosing a conveyor within the fluid chamber, said chip conduit having an opening, wherein the conveyor travels within said chip conduit.

> a funnel within the fluid chamber provided above the opening in the chip conduit, said funnel including at least one tapered surface which captures the chips and directs the chips through said opening in the chip conduit and then onto the conveyor for exit from the fluid chamber.

48

For example, the Accused Messer Instrumentality includes a funnel within the fluid chamber provided above the opening in the chip conduit, said funnel including at least one tapered surface which captures the chips and directs the chips through said opening in the chip conduit and then onto the conveyor for exit from the fluid chamber.

77.     Messer has committed these acts of infringement without license or authorization.

78.     By engaging in the conduct described herein, Messer has caused injury to Kinetic and Kinetic has been damaged and continues to be damaged as a result thereof. Messer is thus liable to Kinetic for infringement of the '454 Patent, pursuant to 35 U.S.C. § 271.

79.     As a direct and proximate result of Messer's infringement of the '454 Patent, Kinetic has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate Kinetic for Messer's past infringement pursuant to 35 U.S.C. § 284, but in no event less than a reasonable royalty, together with interest and costs.

80.     In addition, the infringing acts and practices of Messer have caused, are causing, and, unless such acts or practices are enjoined by the Court, will continue to cause immediate and irreparable harm and damage to Kinetic for which there is no adequate remedy at law, and for which Messer is entitled to injunctive relief pursuant to 35 U.S.C. § 283. As such, Kinetic is entitled to compensation for any continuing and/or future infringement up until the date that Messer is finally and permanently enjoined from further infringement.

81.     Kinetic has been damaged as a result of the infringing conduct by Messer alleged above.  Thus, Messer is liable to Kinetic in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

82.     Kinetic has complied with the marking requirements of 35 U.S.C. Section 287 by marking practicing products with "Patent No." and the patent number.  Kinetic is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '454 Patent.

83.     Messer was aware of and has been on notice of the '454 Patent and on information and belief, its infringement of that patent before the filing of this Complaint, and its infringement has been willful and egregious. For example, upon information and belief, Messer's agents/employees studied Kinetic's product(s) during trade shows (*e.g.* the Fabtech trade shows). Upon information and belief, Messer's studies included recording the structure and/or operation of Kinetic's products, by written, photographic and/or other means.

84.     The product on display at that trade show was marked with the '454 Patent number. Moreover, Kinetic banners and brochures also prominently displayed the '454 Patent number.  After its personnel photographed and studied the Kinetic device, Messer copied the machine to produce and/or modify the Accused Messer Instrumentality.  Because Messer's infringement is willful and egregious, Plaintiffs are entitled to enhanced damages, in the form of treble damages, under 35 U.S.C. § 284.

## DEMAND FOR JURY TRIAL

85.     Plaintiff hereby demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.     Declaring that Messer has infringed and continues to infringe U.S. Patent Nos. 7,625,158; 9,669,560; 9,981,355; and 10,071,454;

B.     Awarding damages to Plaintiffs in an amount no less than a reasonable royalty for Defendants' infringement of U.S. Patent Nos. 7,625,158; 9,669,560; 9,981,355; and 10,071,454

50

together with prejudgment and post-judgment interest and without limitation under 35 U.S.C §

287;

     C.     Award injunctive relief pursuant to 35 U.S.C. § 283 enjoining Messer from

practicing the claims of U.S. Patent Nos. 7,625,158; 9,669,560; 9,981,355; and 10,071,454;

     D.     An award of enhanced damages under 35 U.S.C. § 284, in the form of treble

damages;

     E.     Awarding Plaintiffs attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise

permitted by law; and

     F.     Awarding all other costs and relief that the Court deems just and proper.


                           Respectfully submitted,

                           */s/ Andrew E. Russell*
                           Andrew E. Russell (No. 5382)

OF COUNSEL:               SHAW KELLER LLP
Kevin E. Cadwell           I.M. Pei Building
Lisa M. Thomas            1105 North Market Street, 12th Floor
Bradley S. Bowling        Wilmington, DE 19801
Jon V. Swenson            (302) 298-0700
CADWELL THOMAS LLP     arussell@shawkeller.com
5373 W. Alabama St., Suite 457  *Attorney for Plaintiffs Eigen Systems*
Houston, TX 77056        *Limited, Kinetic Engineering Designs*
(713) 360-1560          *Limited and Kinetic Cutting Systems, Inc.*

Dated: July 20, 2026