**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| EIGEN SYSTEMS LIMITED, KINETIC ENGINEERING DESIGNS LIMITED and KINETIC CUTTING SYSTEMS, INC., | : | |
| Plaintiffs, | : | |
| v. | : | C.A. No. 26-888-MN |
| MESSER CUTTING SYSTEMS, INC., | : | |
| Defendant. | : | |

**OPENING BRIEF IN SUPPORT OF**
**DEFENDANT MESSER CUTTING SYSTEMS, INC.'S**
**<u>PARTIAL MOTION TO DISMISS</u>**


*Of Counsel:*

John C. Scheller (*pro hac vice* pending)
MICHAEL BEST & FRIEDRICH LLP
One S Pinckney St., Suite 700
Madison, WI 53703
(608) 257-3501
jcscheller@michaelbest.com

J. Ryan Gray (*pro hac vice* pending)
MICHAEL BEST & FRIEDRICH LLP
4509 Creedmoor Road, Suite 501
Raleigh, NC 27612
(984) 220-8750
jrgray@michaelbest.com

John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
jcp@pmhdelaw.com
dab@pmhdelaw.com

*Attorneys for Defendant Messer Cutting Systems, Inc.*


Dated: September 11, 2026

## TABLE OF CONTENTS


INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................1

LEGAL STANDARD.............................................................................................5

A. Dismissal Under Rule 12(b)(6) ........................................................................ 5

B. The *Alice* Framework ..................................................................................... 7

ARGUMENT .........................................................................................................9

A. Claim 1 Is Representative of the ‘158 Patent’s Claims .................................. 9

B. *Alice* Step One: Claim 1 Is Directed to an Abstract Idea................................ 9

C. *Alice* Step Two: The Claim Lacks an Inventive Concept ............................... 16

CONCLUSION.....................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016)....8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014).... passim

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
967 F.3d 1285 (Fed. Cir. 2020)....10, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....5, 6

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*,
687 F.3d 1266 (Fed. Cir. 2012)....14

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024) ....10

*Bilski v. Kappos*,
561 U.S. 593 (2010)....6

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)....16, 17

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
859 F.3d 1352 (Fed. Cir. 2017)....6, 7

*Content Extraction & Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014)....7, 8

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011)....14

*Digit. Media Tech. Holdings, LLC v. Digit. Cinema Distrib. Coal., LLC*,
2025 U.S. Dist. LEXIS 187597 (D. Del. Sep. 24, 2025), *appeal filed*, No. 26-1093 (Fed. Cir. filed Oct. 24, 2025)....9

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
815 F. App'x 529 (Fed. Cir. 2020) ....15, 19, 20

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)....................9, 10, 13, 16

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
839 F.3d 1089 (Fed. Cir. 2016)....................6, 13, 18

*Genetic Techs. Ltd. v. Merial L.L.C.*,
818 F.3d 1369 (Fed. Cir. 2016)....................7

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
60 F.4th 1349 (Fed. Cir. 2023) ....................6, 8

*IBM Corp. v. Zillow Grp., Inc.*,
50 F.4th 1371 (Fed. Cir. 2022) ....................10

*IPA Techs., Inc. v. Amazon.com, Inc.*,
307 F. Supp. 3d 356 (D. Del. 2018)....................14

*Lab Tech. LLC v. Greenlight Fin. Tech., Inc.*,
2026 U.S. Dist. LEXIS 164126 (D. Del. July 23, 2026) ....................3, 4, 5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012)....................8

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024) ....................6, 9

*RecogniCorp, LLC v. NintendoCo.*,
855 F.3d 1322 (Fed. Cir. 2017)....................16

*Redwood Techs., LLC v. Netgear, Inc.*,
2024 U.S. Dist. LEXIS 195912 (D. Del. Oct. 28, 2024) ....................16

*Riggs Tech. Holdings, LLC v. Cengage Learning, Inc.*,
2023 U.S. App. LEXIS 942 (Fed. Cir. Jan. 17, 2023) ....................7

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)....................6

*SmileDirectClub, LLC v. Candid Care Co.*,
505 F. Supp. 3d 340 (D. Del. 2020)....................8

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014)....................16, 19

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
887 F.3d 1376 (Fed. Cir. 2018)....................6

*WiTricity Corp. v. Momentum Dynamics Corp.*,
563 F. Supp. 3d 309 (D. Del. 2021) ........................................................................10, 14

**STATUTES**

35 U.S.C. § 101 ............................................................................................................ passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2) ..................................................................................................................5

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ passim

Pursuant to Rule 12(b)(6), Defendant Messer Cutting Systems, Inc. ("Messer") respectfully moves this Court to dismiss Count 1 of Plaintiffs Eigen Systems Limited, Kinetic Engineering Designs Limited, and Kinetic Cutting Systems, Inc.'s (collectively, "Kinetic" or "Plaintiffs") Complaint (D.I. 1) for infringement of U.S. Patent No. 7,625,158 (the "'158 patent") (D.I. 1-1) because the '158 patent is patent ineligible under 35 U.S.C. § 101.

## INTRODUCTION

Claim 1 of the '158 patent is directed to collecting information about plate movement in certain drilling and cutting systems, determining a correction, and applying that correction through a conventional control system. Although the claim requires the control means to "compensate and ensure the drilling or cutting depth is maintained," it does not identify how the control means achieves that result. This is the hallmark of an abstract idea.

Nor does the claim supply an inventive concept. The prosecution history establishes that the '158 patent's abstract idea was the inventive concept which supported allowance of the patent. And the remaining limitations in claim 1 recite only conventional clamping, motor, ball-screw, bearing, and control-system components performing their ordinary functions in a conventional arrangement. Claim 1 is therefore patent ineligible under 35 U.S.C. § 101.

## BACKGROUND

Count 1 of the Complaint alleges infringement of claim 1 of the '158 patent, titled "Clamping Assembly."[1] (*See* D.I. 1 at 10-17.) The '158 patent generally relates to a clamping assembly for drilling and cutting machines of conventional design, including a control means,

[1] The Complaint also alleges infringement of U.S. Patent Nos. 9,669,560, 9,981,355 and 10,071,454. The present motion only addresses Plaintiffs' claim of infringement of the '158 patent. Messer reserves the right to challenge the patent eligibility of the remaining patents as this case progresses.

activation means, moving means, and a clamp foot means.

The '158 patent has one independent claim, which recites:

> 1. A clamping assembly for clamping a product to allow drilling and/or cutting of the product by a drilling or cutting assembly having a drill tool or cutter, the clamping assembly including control means, activation means, moving means and clamp foot means being operatively connected whereby the control means controls the activation means to control the torque and distance moved on the activation means and moving means such that any movement of the drilling or clamping assembly relative to each other can be controlled such that the depth of and timing of drilling or cutting and/or clamping by the drilling or cutting or clamping assembly can be adjusted accordingly such that if the product being clamped by the clamp foot means is moved during any additional forces that occur during drilling or cutting, then the control means can compensate and ensure the drilling or cutting depth is maintained whereby as the control means allows for precise movement between the drilling or cutting and clamping assemblies, movements such as vertically moving the clamp foot means down towards the product to be drilled or cut can occur simultaneously with the movement of the drill assembly such that the clamping assembly leads the drilling tool or cutter by a known amount and conversely the retraction of the clamp foot means can occur simultaneously with the retraction of the drill or cutter once the drill or cutter has retracted clear of the product being drilled or cut.

('158 patent at claim 1.)

By way of background, the '158 patent specification indicates that prior plate and sheet drilling and cutting machines utilized a "drill or cutter [] independently driven by a motor which is raised and lowered by a servo motor" along with a "clamping assembly [] driven down by a pneumatic or hydraulic means and guided by linear bearings." (*Id*. at 1:10-19.) According to the patent, "[m]ost clamping assemblies have a measuring means which comprises a linear measuring device which is used to determine the position of the top of the plate to be drilled with respect to the bottom of the drill so that the drill only goes down a set distance." (*Id*. at 1:20-24.) The measuring device "measur[es] the length of the extension of the clamp cylinders, and therefore the top of the plate to be machined." (*Id*. at 1:26-28.) According to the patent, problems with these prior clamping assemblies included the fact that "linear measuring is time consuming and can be

inaccurate. Problems can also arise when the clamping causes deflection of the plate which can effect [sic] the linear measure distance which is not able to pick up such small changes which still can greatly effect drilling where by [sic] the plate may not be drilled or cut." (*Id*. at 1:41-46.) The '158 patent's solution to the problems caused by deflection of the plate is the claimed compensation function whereby "the control means can compensate and ensure the drilling or cutting depth is maintained." ('158 patent at claim 1.)

To be sure, the compensation function is the claim limitation on which patentability turned. Specifically, the sole reason provided by the examiner for allowance of the '158 patent was the fact that "[c]laim 1 sets forth the limitations that if the product (workpiece) being drilled or cut moves due to 'any additional forces that occur during drilling or cutting, then the control means can compensate and ensure the drilling or cutting depth is maintained" whereas "[i]f the drill bit of Gudow [the prior art] happens to move the product/workpiece as the bit feeds inward, then Gudow has no mechanism to compensate, and an undersized hole will be drilled." (Gray Decl., Ex. A (Notice of Allowance) at 5.) *See Lab Tech. LLC v. Greenlight Fin. Tech., Inc*., 2026 U.S. Dist. LEXIS 164126, at *15 (D. Del. July 23, 2026) ("Prosecution history is a matter of public record, which is properly considered at the motion to dismiss stage.") (citing *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018)).

With regard to the claimed invention, the specification describes a "clamping assembly for clamping a product to allow drilling and/or cutting of the product by a drilling or cutting assembly" which includes "control means, activation means, moving means, and clamp foot means being operatively connected." ('158 patent at 1:65-2:3; *see also* Figs. 1, 3 below.) The "control means 22 can include electronic means such as wire or wireless connection with a screen/console and/or computer, and servo based mechanism which can include the gearing and motors each for the

clamping and drilling assemblies" or, in other words, a "servo based closed loop control system." (*Id*. at 4:28-33.) The activation means "can include a servo controlled motor and clamp foot means can include clamp foot 20 and an operatively connected holding means." (*Id*. at 4:12-14.) The "moving means is a ball screw guided by linear bearings." (*Id*. at 2:60-61, 4:1-8.)[2]



FIGURE 1



FIGURE 3

With respect to how the claimed compensation is achieved, the patent merely states as follows:

- "[I]f the product being clamped by the clamp foot means is moved during any additional forces that occur during drilling, then the control means 22 can compensate and ensure the drilling is maintained" (*id*. at 4:40-43);

- "However due to the force on the plate during drilling, when the clamp foot means 18 is clamping plate 2, there is an additional force which can cause the plate to be deflected down. This plate deflection affects the depth of drilling on a plate 2 if the top of plate 2 is set as the depth control, which subsequently moved. With this servo controlled clamp foot means 18, any deflection or movement of the plate 2 can be dynamically monitored and compensated for whereby the drill depth can be adjusted accordingly" (*id*. at 5:1-10); and

[2] By making this motion, Messer takes no position as to claim construction and the definiteness or indefiniteness of '158 patent's terms.

- "The control means can then compensate and ensure the drilling depth is maintained from underneath the surface of the clamp foot means 18." (*Id.* at 5:17-20.)

None of these excerpts, however, provide any details as to how the clamping assembly achieves the claimed compensation function.

Like the independent claim, the dependent claims of the '158 patent have the same general focus on the abstract idea of collecting data, analyzing it, and applying a correction based on the results, adding only conventional features. (*See generally id.* at claims 2-6.) For example, the dependent claims add limitations relating to additional requirements that:

- the activation means is a servo motor (*id.* at claim 2);
- the control means is servo based closed loop control system (*id.* at claim 3);
- the moving means is a ball screw guided by linear bearings (*id.* at claim 4);
- the clamp foot means comprises a planar member shaped to allow a drill or cutter at least partially therethrough and still able to be held onto any said product (*id.* at claim 5); and
- the assembly includes support means and power means. (*Id.* at claim 6.)

As with the independent claim, none of these dependent claims recite any inventive features or explain how the components achieve the recited tasks.

## LEGAL STANDARD

### A. Dismissal Under Rule 12(b)(6)

Fed. R. Civ. P. 12(b)(6) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and a court is not required to accept

"legal conclusions" as true. *Id*.

The Federal Circuit has "repeatedly recognized" that "it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1289–90 (Fed. Cir. 2024) (quoting *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016)); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (affirming grant of motion for judgment on the pleadings where the claims were directed to abstract ideas of "selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis"); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1096 (Fed. Cir. 2016) (affirming grant of Rule 12(b)(6) dismissal where patent was directed to abstract idea of analyzing records of human activity to detect suspicious behavior and use of generic computer elements did not transform the abstract idea into patent-eligible subject matter); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1379 (Fed. Cir. 2018) (affirming Rule 12(b)(6) dismissal where the patent was directed to abstract ideas of voting, verifying the vote, and submitting the vote for tabulation which were carried out by general purpose computers). This is because patentability under 35 U.S.C. § 101 is a "threshold test." *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). The inquiry is properly raised at the pleading stage where it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017).

While patent eligibility is a question of law that may involve underlying issues of fact, dismissal on eligibility grounds is appropriate where there are no disputed facts material to the issue of patent eligibility. *See, e.g.*, *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1356 (Fed. Cir. 2023) ("Patent eligibility may be resolved on a Rule 12(b)(6) motion where the

undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law.") (quoting *SAP Am.*, 898 F.3d at 1166); *Riggs Tech. Holdings, LLC v. Cengage Learning, Inc.*, 2023 U.S. App. LEXIS 942, at *11 (Fed. Cir. Jan. 17, 2023) ("We have held that patent eligibility can be determined at the Rule 12(b)(6) stage 'when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.'") (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).

Further, "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Content Extraction & Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *see also Genetic Techs.*, 818 F.3d at 1374 ("In many cases, too, evaluation of a patent claim's subject matter eligibility under § 101 can proceed even before a formal claim construction."). To be sure, the Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Cleveland Clinic*, 859 F.3d at 1360 (affirming dismissal at the motion to dismiss stage, without addressing claim construction).

### B. The *Alice* Framework

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter" may obtain a patent. 35 U.S.C. § 101. The Supreme Court has long recognized an implicit exception to this broad grant: "laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). The "abstract ideas" exception captures "the longstanding rule that '[a]n idea of itself is not patentable.'" *Id.* at 218 (quoting *Gottschalk v. Benson*, 409 U.S. 63,

67 (1972)). The policy behind this rule is simple: allowing "monopolization of [ideas] through the grant of a patent might tend to impede innovation more than it would tend to promote it." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012).

Courts determine patent eligibility in two steps. At step one, the court must determine whether the claim is "directed to . . . patent-ineligible concepts," like an abstract idea. *Alice*, 573 U.S. at 217. To do so, the court must evaluate "the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (quotations omitted). In doing so, the court is to "focus on the language of the asserted claims, considered in light of the specification." *Hawk Tech*., 60 F.4th at 1356 (citing *Yu v. Apple*, 1 F.4th 1040, 1043 (Fed. Cir. 2021)). "To determine whether claims are directed to an abstract idea[,] courts generally compare the claims at issue to those claims already found to be directed to an abstract idea in previous cases.'" *SmileDirectClub, LLC v. Candid Care Co*., 505 F. Supp. 3d 340, 349 (D. Del. 2020) (quotation omitted).

If a claim is directed to an abstract idea, the court proceeds to step two, which analyzes whether the claim elements, "both individually and as an ordered combination," contain an "'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application of the abstract idea." *Content Extraction*, 776 F.3d at 1347 (citation modified) (citing *Alice*, 573 U.S. at 217-18). This requires more than the performance of "well-understood, routine, and conventional activities previously known to the industry." *Id*. at 1347-48 (quoting *Alice*, 573 U.S. at 225).

## ARGUMENT

### A. Claim 1 Is Representative of the '158 Patent's Claims

As a procedural matter, the Court may limit its analysis under section 101 to a representative claim when the claims at issue are "substantially similar and linked to the same ineligible concept." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (quoting *Cleveland Clinic*, 859 F.3d at 1360). Independent claim 1, the sole independent claim of the '158 patent, can serve as the representative claim of the '158 patent because all claims of the '158 patent are substantially similar and linked to the same abstract idea. *Supra* at 5. Moreover, Plaintiffs' Complaint does not address any of the '158 patent's claims other than claim 1. (*See* D.I. 1, ¶¶ 34-45.) Claim 1, therefore, is representative of the claims of the '158 patent. *See Digit. Media Tech. Holdings, LLC v. Digit. Cinema Distrib. Coal., LLC*, 2025 U.S. Dist. LEXIS 187597, at *13 (D. Del. Sep. 24, 2025) (finding independent claim representative where dependent claims added no significantly distinct limitations and the complaint addressed no other claim), *appeal filed*, No. 26-1093 (Fed. Cir. filed Oct. 24, 2025).

### B. *Alice* Step One: Claim 1 Is Directed to an Abstract Idea

The hallmark of an abstract idea is the "result-focused, functional character of claim language." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016). Claim 1 is directed to the patent-ineligible abstract idea of collecting data, analyzing it, and applying the results—sensing a deviation or deflection in plate location, computing a correction, and applying it—in the context of a generic clamping assembly.

Specifically, the '158 patent uses a "control means" to "***compensate*** and ensure the drilling or cutting depth is maintained" if the product being clamped is moved during drilling or cutting. ('158 patent at claim 1.) The specification confirms that the '158 patent is directed to the abstract

idea of collecting data, analyzing it, and applying it to achieve a desired result: the "Background of the Invention" section states that the patent purports to address problems with the prior art that "arise when the clamping causes deflection of the plate which can effect [sic] the linear measure distance which is not able to pick up such small changes which still can greatly effect drilling where by the plate may not be drilled or cut." (*Id.* at 1:42-46.) *See WiTricity Corp. v. Momentum Dynamics Corp.*, 563 F. Supp. 3d 309, 319 (D. Del. 2021) (looking to the specification to ascertain what the claim is "directed to") (quoting *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019)).

As the Federal Circuit has repeatedly found, such a results-focused claim is directed to an abstract idea and, therefore, ineligible under § 101. *See Elec. Power*, 830 F.3d at 1356 ("result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101"); *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1295 (Fed. Cir. 2020) ("The Supreme Court has long held that claims that state a goal without a solution are patent ineligible."); *IBM Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022) (quoting *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016)) ("a claim that merely describes an effect or result dissociated from any method by which it is accomplished" is generally "not directed to patent-eligible subject matter"); *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024) (claims using "result-focused functional language containing no specificity about how the purported invention achieves those results . . . are almost always found to be ineligible for patenting under Section 101").

The Federal Circuit's reasoning in *Am. Axle* is instructive. There, the claims were directed to a method of manufacturing driveline propeller shafts with liners designed to attenuate vibrations. 967 F.3d at 1289. The Federal Circuit found that the claim at issue "define[d] a goal

[i.e., result] ('tuning a liner' to achieve certain types of vibration attenuation)" without identifying the "'particular tuned liners' or the 'improved method' of tuning the liners to achieve the claimed result." *Id*. at 1293-94. In other words, the claim was focused on a result (dampening vibrations) as opposed to "any physical structure or steps for achieving the claimed result," "simply instruct[ing] the reader to tune the liner to achieve a claimed result, without limitation to particular ways to do so." *Id*. at 1295, 1298.

By way of further example, in *Brunswick Corp. v. Volvo Penta of the Ams., LLC*, one of the patents at issue was directed to "'controlling movement of a marine vessel,' to respond to 'unintended movements' that 'are caused by external effects on the vessel, such as wind, current, etc.'" 640 F. Supp. 3d 498, 513 (E.D. Va. 2022). The court determined the claim at issue was directed to the abstract idea of "controlling the movement of a marine vessel to remedy unintended movements caused by external effects." *Id*. Critically, the claim merely listed prior art devices, including sensors and controllers, "and a result, without specifying rules for achieving the result of controlling the movement of a marine vessel to respond to unintended movements caused by external effects." *Id*. at 514. As a result, the claim was patent ineligible because it "essentially 'state[d] an abstract idea while adding the words 'apply it with a computer.'" *Id*.

Similar to the claims at issue in *Am. Axle* and *Brunswick*, claim 1 here merely states a functional result and fails to "identify 'how' th[e] functional result is achieved by limiting the claim scope to structures specified at some level of concreteness[.]" *Am. Axle*, 967 F.3d at 1302. To be sure, claim 1 of the '158 patent recites the functional result of "compensat[ing] and ensur[ing] the drilling or cutting depth is maintained" without specifying how such compensation is accomplished. Instead, the claim simply indicates that this compensation function is carried out by the "control means." ('158 patent at claim 1.)

The '158 patent specification provides no additional insight into how the control means accomplishes the compensation function. Instead, it merely recites:

> The control means 22 controls the activation means to control the torque and distance moved on all the activation means (first, second and third) and moving means such that any movement of the drilling or clamping assembly relative to each other can be controlled such that the depth of and timing of drilling and or clamping by the drilling or clamping assembly can adjust accordingly such that if the product being clamped by the clamp foot means is moved during any additional forces that occur during drilling, ***then the control means 22 can compensate and ensure the drilling is maintained***.

(*Id*. at 4:34-43 (emphasis added).) This language effectively parrots the claim language and provides no technical detail as to how compensation is achieved.

The specification describes the "control means" as potentially including "electronic means such as wire or wireless connection with a screen/console and/or computer, and servo based mechanism which can include the gearing and motors each for the clamping and drilling assemblies," and characterizes it as a "servo based closed loop system." (*Id.* at 4:28-33.) That description, however, cannot rescue the claim from patent ineligibility.

Each identified component—the "wire or wireless connection with a screen/console and/or computer, and servo based mechanism" and the "servo based closed loop system"—is a generic, conventional device. Indeed, the specification does not describe a new console, computer, servo based mechanism, or servo based closed loop system. Nor does the patent describe or claim a specific improvement to the functionality of a computer, servo based mechanism, or servo based closed loop system, nor a non-conventional or non-generic arrangement of these known components. This is insufficient to pass muster under step one of *Alice*. *See TLI Commc'ns*, 823 F.3d at 612 (claims were directed to an abstract idea, and not improvement to computer functionality where "[t]he specification d[id] not describe a new telephone, a new server, or a new physical combination of the two").

In fact, the specification fails to provide *any* technical details for these components. Instead, it describes the system in purely functional terms. For example, the specification provides that "[w]ith [the] servo controlled clamp foot means 18, any deflection or movement of the plate 2 can be dynamically monitored and compensated for whereby the drill depth can be adjusted accordingly." ('158 patent at 5:6-10.) Notably absent, however, is any description or specificity as to how monitoring and compensation are achieved by the "servo controlled clamp foot means" or "control means." That is, the '158 patent does not explain the feedback algorithm or control logic by which the control means detects deflection of the plate and computes the desired compensation.

Simply put, the '158 patent claims no rules and no unique technology to allow for compensation if the plate moves during drilling. Rather, it "essentially 'states an abstract idea while adding the words 'apply it with a computer.'" *Brunswick*, 640 F. Supp. 3d at 514 (quoting *Alice*, 573 U.S. at 223) (finding claim which listed "devices, sensors, controllers, and a result, without specifying rules for achieving the result of controlling the movement of a marine vessel to respond to unintended movements caused by external effects" was patent ineligible); *see also TLI Commc'ns*, 823 F.3d at 612 (claim patent ineligible where the "specification fail[ed] to provide any technical details for the tangible components, but instead predominantly describes the system and methods in purely functional terms").

While the claimed clamping assembly purportedly increases the speed and accuracy of existing clamping assemblies ('158 patent at 1:41-46, 6:12, 6:14), these improvements come from the capabilities of a general-purpose computer and servo based closed loop system, not from any specific improvement contained in the patent. To be sure, the patent lists the fact that the claimed clamping assembly is "[a]ble to be computer linked" as one of its advantages without identifying any improvements that the patent contributes to the referenced computer. (*Id.* at 6:16.) As a result,

"the focus of the claim[] is not on . . . an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Elec. Power*, 830 F.3d at 1354; *see also FairWarning*, 839 F.3d at 1095 ("While the claimed system and method certainly purport to accelerate the process of analyzing audit log data, the speed increase comes from the capabilities of a general-purpose computer, rather than the patented method itself."); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter.").

That claim 1 recites a physical apparatus does not alter the analysis. *Alice* itself involved claims to a "system" with physical components, including data processing units and communications controllers. 573 U.S. at 226. The Federal Circuit has repeatedly held that "not every claim that recites concrete, tangible components escapes the reach of the abstract-idea inquiry." *TLI Commc'ns*, 823 F.3d at 611 (finding the claim's recitation of "concrete, tangible components such as 'a telephone unit' and a 'server,'… merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner"); *see also CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1374 (Fed. Cir. 2011) ("Regardless of what statutory category ('process, machine, manufacture, or composition of matter,' 35 U.S.C. § 101) a claim's language is crafted to literally invoke, we look to the underlying invention for patent-eligibility purposes."); *WiTricity*, 563 F. Supp. 3d at 320 ("[T]he mere fact that a device is a tangible system or 'machine' is not dispositive. This is particularly true where the specification fails to provide any technical details for the tangible components, but instead describes the system and methods in purely functional terms without any meaningful limitations.") (citations omitted); *IPA Techs., Inc. v. Amazon.com, Inc.*, 307 F. Supp. 3d 356, 362 (D. Del. 2018)

("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.") (quoting *Alice*, 573 U.S. at 223).

For example, in *TLI Commc'ns*, the claims were directed to an apparatus, system, and method for "classifying an image and storing the image based on its classification." 823 F.3d at 611. While the apparatus claim required "concrete, tangible components such as 'a telephone unit' and a 'server,'" the "recited physical components merely provide[d] a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner" without "any claim that the invention reflects an inventive solution to any problem[.]" *Id*. at 611-12. Moreover, the specification did not "describe a new telephone, a new server, or a new physical combination of the two," "fail[ed] to provide any technical details for the tangible components" and "instead, predominately describe[d] the system and methods in purely functional terms." *Id*. at 612.

The '158 patent does not specify any particular mechanical improvement or structural arrangement. Instead, the claim utilizes a generic "control means" to achieve the desired result of compensation. ('158 patent at claim 1.) Similarly, the '158 patent's specification's description of the control means' structure does not describe (1) any new computer, console, servo based mechanism, or servo based closed loop system, (2) any improvement to the functionality of a computer, servo based mechanism, or servo based closed loop system, or (3) a non-conventional or non-generic arrangement of these known components. Rather, the patent describes the "control means" in purely functional terms.

The allegations contained in the Complaint regarding the non-abstract nature of the '158 patent do not alter the analysis. Kinetic merely alleges in conclusory fashion that the '158 patent is "directed to inventive concepts that are not abstract." (D.I. 1 ¶ 4.) Such conclusory allegations

are insufficient to defeat a motion to dismiss. *See Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (affirming Rule 12(b)(6) dismissal under § 101, finding plaintiff's attorney argument and conclusory allegations insufficient to defeat a motion to dismiss); *Redwood Techs., LLC v. Netgear, Inc*., 2024 U.S. Dist. LEXIS 195912, at *29-30 (D. Del. Oct. 28, 2024) ("[W]hile 'plausible factual allegations of inventive concept can defeat a motion to dismiss, a plaintiff cannot defeat a motion to dismiss merely by including conclusory allegations of inventiveness.'") (quotation omitted).

At bottom, claim 1 is defined by what it accomplishes, not by how—the control means "can compensate and ensure the drilling or cutting depth is maintained." This "result-focused, functional character" is the hallmark of an abstract claim. *Elec. Power*, 830 F.3d at 1356.

### C. *Alice* Step Two: The Claim Lacks an Inventive Concept

At step two of *Alice*, the Court asks whether "the additional elements 'transform the nature of the claim' into a patent-eligible application" by supplying "an 'inventive concept.'" *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 67). That is, "[a]fter identifying an ineligible concept at step one, [the court] ask[s] at step two 'what else is there in the claims before us?'" *BSG Tech LLC v. BuySeasons, Inc*., 899 F.3d 1281, 1290 (Fed. Cir. 2018) (quoting *Mayo*, 566 U.S. at 78). Critically, the abstract idea alone cannot satisfy the "inventive concept" inquiry. *See id.* ("It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."). Instead, "[t]o save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. NintendoCo*., 855 F.3d 1322, 1327 (Fed. Cir. 2017). In other words, the claims must go beyond relying on conventional devices and software doing conventional things. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) ("A

claim that recites an abstract idea must include 'additional features' to ensure 'that the claim is more than a drafting effort designed to monopolize the abstract idea. Those 'additional features' must be more than 'well-understood, routine, conventional activity.'") (citations omitted) (quoting *Alice*, 573 U.S. at 221, 225).

As an initial matter, the prosecution history establishes that the lone inventive concept which supported allowance of the '158 patent was the abstract idea itself. (Ex. A at 5.) To be sure, the examiner expressly stated that the '158 patent was allowed because the prior art (Gudow) did not teach the concept of the control means compensating for movement of the plate that occurs during drilling or cutting to maintain drilling or cutting depth. (*Id.*) As discussed above, this result-focused, functional language regarding the compensation function is an abstract idea. This dooms claim 1 at step two of *Alice* because the abstract idea itself cannot supply the inventive concept. Accordingly, the '158 patent has no "inventive concept" sufficient to satisfy *Alice*. *See BSG Tech*, 899 F.3d at 1290.

Further, claim 1 adds nothing "significantly more" to the claimed result of compensating for plate movement to maintain drilling or cutting depth. (*See* '158 patent at claim 1.) As discussed above, the patent states the "control means" can include "electronic means such as wire or wireless connection with a screen/console and/or computer, and servo based mechanism" and "servo based closed loop system." (*Id.* at 4:28-33.) But it does not claim to have improved these components, describes no new computer, console, servo based mechanism, or servo based closed loop system, and discloses no non-conventional or non-generic arrangement of these known technologies. In fact, the specification contains ***no*** description of how these components operate. Reciting known components performing their ordinary functions is insufficient to add "significantly more" to the claimed abstract idea. *See TLI Commc'ns*, 823 F.3d at 613-14 (conventional "telephone unit" and

"server" added no inventive concept because they did not "involve more than performance of 'well-understood, routine, and conventional activities previously known to the industry'") (quoting *Content Extraction*, 776 F.3d at 1347-48); *Brunswick*, 640 F. Supp. 3d at 515 (combination of joystick, sensor, and actuator insufficient to supply an inventive concept because they were "'generic technologies' by which the abstract idea is carried out"); *FairWarning*, 839 F.3d at 1097 ("[A]fter *Alice*, there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible.") (quoting *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014)).

The remaining claim elements include an "activation means" (a servo motor), a "moving means" (a ball screw guided by linear bearings), and a "clamp foot means" ("a planar member shaped to allow a drill or cutter at least partially therethrough and still be held onto any said product"). (*See* '158 patent at 2:23, 26-30, 56-57, 60-64; 4:4-17.) But the '158 patent specification acknowledges that each of these items is a standard industrial drilling component. Namely, the specification provides that prior "plate and sheet drilling and cutting machines" included a "drill or cutter [that] is independently driven by a motor which is raised and lowered by a servo motor [i.e., the claimed activation means]." (*Id*. at 1:11-17.) Such drilling and cutting machines also included a "clamping assembly [that] is driven down by pneumatic or hydraulic means and guided by linear bearings [i.e., the claimed moving means]." (*Id*. at 1:17-19.) Further, the prior clamp assemblies included "an air or hydraulic cylinder [] attached to a clamp foot means which in turn leads to a clamp plate which abuts/pushes with a clamp force on the product to be drilled or cut [i.e., the claimed clamp foot means][.]" (*Id*. at 1:33-36.)

Moreover, the '158 patent claims and describes no non-conventional or non-generic arrangement of these known components. Indeed, its specification concedes that prior clamping

assemblies used servo motors and pneumatic clamping sequentially. (*See id*. at 1:11-19 ("In this case the drill or cutter is independently driven by a motor which is raised and lowered by a servo motor. And the clamping assembly is driven down by pneumatic or hydraulic means and guided by linear bearings.").) Because the remaining claim elements are generic components arranged conventionally to perform "well-understood, routine, and conventional activities previously known to the industry," they are insufficient to supply an inventive concept. *TLI Commc'ns*, 823 F.3d at 614 (quoting *Content Extraction*, 776 F.3d at 1347-48); *see also Ultramercial*, 772 F.3d at 715 (granting motion to dismiss where the claimed sequence of steps comprised only "'conventional steps, specified at a high level of generality' which is insufficient to supply an 'inventive concept'") (quotation omitted).

Finally, Kinetic's allegations regarding the purported inventiveness of the '158 patent cannot save it under § 101. Kinetic conclusively alleges that "[t]he patented inventions claimed in the Asserted Patents [including the '158 patent] resolve concrete technical problems related to automated drilling and cutting systems." (D.I. 1 ¶ 4.) These conclusory allegations are insufficient to defeat a motion to dismiss. *See Dropbox*, 815 F. App'x at 538 (finding "conclusory allegation that 'the inventions described and claimed in the [patent] for example solved these problems,' [] or that 'the [patent] for example describes and claims a number of novel and inventive approaches to data backup . . . captured in' the claims of the patent" were insufficient to survive a motion to dismiss) (citations omitted).

Specifically relating to the '158 patent, Kinetic alleges that the named inventor, Murray Houlton Forlong, "conceived of and invented a novel way to facilitate drilling and/or cutting of metal . . . by an assembly that maintains accuracy but cuts the operational time by approximately two thirds[.]" (D.I. 1 ¶ 20.) Kinetic further alleges that the '158 patent's purported invention was

"a significant improvement over prior cutting systems" because "Mr. Forlong developed a device where the cutting/drilling assembly and clamp foot could be moved more efficiently by being efficiently retracted above the work surface to move to the new area prior to being moved down to begin cutting or drilling." (*Id.*) These allegations are flawed for a few reasons. First, they are mere attorney argument insufficient to overcome a motion to dismiss. Second, the allegations contain no reference to the patent specification which might disclose that the purported invention is an improvement over the prior art. Third, even accepting these allegations as true, they simply describe the abstract idea in slightly different terms. That is, the allegations describe a result (faster operational time) without identifying a specific structural or algorithmic innovation that achieves it. Indeed, the specification confirms this result is achieved through the generic "control means" and conventional components—not through any new component or non-conventional arrangement. (*See* '158 patent at 5:21-50.) Fourth, they are undermined by the prosecution history. *Supra* at 17. Accordingly, Kinetic's allegations regarding the inventiveness of the '158 patent are insufficient to survive a motion to dismiss. *See Dropbox*, 815 F. App'x at 538 (allegations that the patents "solve[d] given technological problems" while not "provid[ing] more support than a conclusory statement that 'the inventions described and claimed . . . solved these problems,' improved the art, 'represented a significant advance over existing approaches, and were not well-known, routine, or conventional in the field' at the time of patenting" were insufficient to survive motion to dismiss).

**CONCLUSION**

For the foregoing reasons, Messer respectfully requests the Court grant this motion, find the '158 patent is patent ineligible under § 101, and dismiss Count 1 of Plaintiffs' Complaint with prejudice.

Respectfully submitted,

Dated: September 11, 2026

*<u>/s/ John C. Phillips, Jr.</u>*
John C. Phillips, Jr. (No. 110)
David A. Bilson (No. 4986)
PHILLIPS, MCLAUGHLIN & HALL P.A.
1200 North Broom Street
Wilmington, DE 19806
jcp@pmhdelaw.com
dab@pmhdelaw.com
(302) 655-4200

John C. Scheller (*pro hac vice* pending)
MICHAEL BEST & FRIEDRICH LLP
One South Pinckney Street, Suite 700
Madison, WI 53703
jcscheller@michaelbest.com
(608) 257-3501

J. Ryan Gray (*pro hac vice* pending)
MICHAEL BEST & FRIEDRICH LLP
4509 Creedmoor Road, Suite 501
Raleigh, NC 27612
jrgray@michaelbest.com
(984) 220-8750

*Attorneys for Defendant*
*Messer Cutting Systems, Inc.*